**GREEN v. ALLEN, Collector of Internal Revenue.**

**Civil Action No. 314.**

District Court, M. D. Georgia, Macon Division.

July 26, 1946.

W. Herbert Hodges and Jno. L. Westmoreland, both of Atlanta, Ga., for plaintiff.

Jno. P. Cowart, U. S. Atty., of Macon, Ga., and Mills Kitchin, Sp. Asst. to Atty. Gen., for defendant.

RUSSELL, District Judge.

### Findings of Fact.

Prior to the sale hereinafter referred to, James A. Green had for some fifteen years engaged in the business of Advertising Agent placing advertisements in newspapers, magazines and by means of radio under the name of James A. Green and Company. He had built up an organization of specialists in different departments the heads of which had been with him on the average of ten years. During this period of fifteen years he had accumulated files, memoranda and statistical information with reference to the trade possibilities of various areas.

The income of such an advertising agent is derived from representation of advertisers which enables the agent to place advertising with various advertising mediums who pay to the agent a commission upon the amount received from the advertiser. An agency must be recognized by the various trade associations before it can receive the trade discount which constitutes the agency income, and the number of advertising accounts owned by the agency has a material bearing upon the recognition by the trade associations and the securing of the percent of the discount allowed to the advertising agency. In 1938, plaintiff's physical condition was such that he was advised that he had less than a fifty-fifty chance to live and was told by his doctor that if he did not give up his business he could not live. He desired to hold his organization together, but the evidence fails to show that he took any steps towards this end except the sale to one of his executives which is hereinafter referred to. The income from his business averaged around $45,000 a year and he had an income of $72,000 in the ten months prior to the sale.

In the advertising agency business there are two types of contracts: One a "general coverage client contract, and then the other contract is a purchase contract where he buys from you an advertising campaign on 50 radio stations or ten or whatever it might be." These contracts are not transferable without the consent of the customer, and in most cases they are cancellable by ninety days notice.

In November, 1938, the plaintiff sold to Tucker Wayne for the consideration of $22,500 "the good will and advertising accounts and contracts of said party of the first part (Green)," payable in annual installments of $3750 each. It is a fair conclusion from the evidence that prior to the final execution of the sale all customers of the agency except one had agreed to the transfer of the accounts from Green to Wayne. However, the contract provides "that no abatement shall be made in the purchase price in event an advertiser fails or refuses to assent to the transfer." The contract refers to "the business sold in this contract," and provides that the business shall be incorporated in the former trade name of Green and so remain until January 1, 1940, but within sixty days thereafter should be changed. Green agreed as far as warranted by his physical condition to assist the corporation to secure renewals of the advertising accounts passing by the terms of the contract. By an independent contract, Green sold to Wayne all of the physical property of the agency, consisting of files, office equipment, bound volumes of books, etc., for the price of $5,000. The accounts receivable and the cash on hand were not conveyed by either of the contracts.

None of the contracts for representation of advertisers ran for a period of time exceeding one year, though as stated, in the past they had generally been renewed from year to year.

It appears from the evidence that the business considered as the organization and its standing with advertisers, that is what might be denominated as good will, had some value, and the accounts with advertisers had very great value; and according to the testimony that value "was all the business had," but had "no value other than as a part of a going concern." However, it cannot be found from the evidence that the contracts were of value only to the organization formerly headed by Green, and it is found that the contracts, transferable by the advertiser at the request of Green, had great value to any advertising agency. In this case no attempt is made by the evidence to segregate the value of the "business" from the value of the contracts and accounts.

In his individual income tax return for the year 1940, complainant, Green, set forth as "Gains and losses from sales of property other than capital assets for the year ended December 31, 1940 (Schedule G) furniture and fixtures," referred to above, at a sales price of $5,000, and "advertising accounts, etc." at a sales price of $22,500, and the tax was calculated upon the installment of $3,750 paid in that year as ordinary income. For the year 1941 a similar return was filed. Sometime, and prior to the filing of the 1941 return, complainant, Green, called to the attention of the accountant

who prepared his return his contention that the installment payment was a capital gain from the sale of a capital asset held over twenty-four months, but nevertheless executed the return, and at the time of the execution of both returns he was familiar with the provisions of the statute with reference to capital gains and losses with reference to stock purchases and sales. Thereafter, in 1942, complainant filed claim for refund upon the ground that he had erroneously treated the installment received from the sale of "advertising contracts, etc.," as an ordinary gain instead of a capital gain subject to capital gain limitation.

The present suit was filed more than six months after the claims for refund were filed and seeks to recover the amount due in accordance with the contention of the complainant that the return of the installment as ordinary gain was erroneous, and that by eliminating fifty percentum of said gain from the net income, complainant is entitled to a specified refund.

The complaint is in two counts, the first predicated upon the contention that the sale was that of an "advertising agency in its entirety and that the agency was a capital asset," and the second count predicated upon the contention that the transaction was a sale of good will, and as such was a capital asset.

▆ The sale by complainant to Wayne was not made in the ordinary course of his business but represented a discontinuance of such business. The ordinary course of complainant's business was the securing of contracts of representation from advertisers, and then upon receipt of specified orders or direction, placing advertising in various advertising mediums and receiving from such advertising mediums a specified discount or percentage of commission. Except for the contracts there was no business, and in substance the contracts were the instruments which produce the income of the agency. The holder of the contracts, with the consent of the advertiser, possessed the means of earning income, and it may be assumed that the value of such contracts is well known to anyone familiar with the advertising business.

## Conclusions of Law

This Court has jurisdiction of the parties and subject matter.

▆ The way this case appears to the Court it is unnecessary to determine the very interesting question of whether the sale in its entirety was of capital assets or not. The burden rests upon the complainant to show that the original return was erroneous in that the sales installment received in its entirety was not a net gain from sale of property other than capital assets as set forth in the return which he filed and upon which the tax was paid which is now sought to be recovered. This he has failed to do, for it is clear that the sale cannot be construed as of the single item of an advertising agency as contended by the complainant. As a fact it is found that though the agency had some sale value, without regard to the contracts, nevertheless the contracts constituted the main, substantial element of value for which the purchaser was willing to pay $22,500. Indeed, it is testified that the sale could not be consummated until the consent of each advertiser, except one, was obtained to the transfer. In attempting to prove that the contracts were merely incidental to the sale and were of such brief duration and subject to cancellation as that they had no independent value, complainant finds himself in the position that even if it were to be determined that the contracts in fact evidenced a capital asset, they would not, because of their nature, constitute such an asset held more than 24 months as to entitle complainant to the relief sought in this case. This point is not specifically presented on behalf of the defendant, but appears to be such a clear bar to the complainant's right to recover as must be noticed of the Court's own motion. The argument of the complainant that what actually was sold was the right to solicit a continuance of representation already possessed by the complainant seller, is not supported by the evidence. There being no evidence as to any proper division in value between good will, or the agency as such, and the contracts found to constitute the substantial value conveyed by the sale, there is no basis for the grant of any partial relief.

Furthermore, in this case we have the interpretation of what was sold by the seller evidenced by a verified return in each of two years. This interpretation from one with fifteen years experience in the advertising business is certainly entitled to some weight in such a doubtful case as the present.

In the absence of strong and compelling reasons for determining that the return as filed was erroneous, the plaintiff is not entitled to recover, and such does not appear in this case.

From what has been said above, it follows that the transaction did not evidence a sale of good will only, and this renders unnecessary any further discussion of the alternative claim of the complainant presented by the second count of the complaint.

The complainant shows no right to recovery in this case, and accordingly judgment should be entered for the defendant.